THE MAYOR AND ALDERMEN OF THE CITY OF PATER-
SON, APPELLANT, v. THE MAYOR AND ALDERMEN
OF THE CITY OF JERSEY CITY, RESPONDENT.

Argued November 19, 1914—Decided March 1, 1915.

The act of March 14th, 1883, entitled "An act to provide for the pur-
chase, construction and maintenance of public parks by the cities
and other municipalities in this state" (*Comp. Stat.*, *p.* 4141),
does not authorize municipalities that take advantage of its pro-
visions to appropriate for park purposes the public waters of the
state; and therefore a condemnation by a municipality of the
right to take and divert water perpetually from a river which
borders upon a public park of another municipality, does not su-
perimpose an additional public use upon one already existent.

On appeal from the judgment of the Supreme Court, whose
opinion is reported in 84 *N. J. L.* 454.

For the appellant, *Edward F. Merrey, William B. Gourley*
and *John W. Griggs.*

For the respondent, *Gilbert Collins.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE.   This was a *certiorari* proceed-
ing brought to review the action of a justice of the Supreme
Court in appointing commissioners, upon the application of
Jersey City, to condemn the right to take and divert per-
petually from the Rockaway river (a tributary of the Passaic
river), at Boonton, the quantity of water necessary for its
water-supply, as against riparian lands of the prosecutor,
the mayor and aldermen of the City of Paterson.   These
lands consist of two public parks bordering upon the river.

The single ground upon which the prosecutor, in the Su-
preme Court, challenged the validity of the proposed con-
demnation proceedings was that they were not authorized
by statute, because the waters of the Passaic washing the
lands already indicated had been devoted by the legislature

to a prior public use as a part of the municipal park system of Paterson. The Supreme Court, assuming the prior appropriation to public use, held that what Jersey City was seeking to acquire was a right to a joint user of running water; and that by the act of 1895, empowering cities to condemn water and water rights for the purpose of a municipal supply (*Comp. Stat., p.* 2198, § 38), it was authorized to acquire such right, notwithstanding the fact that the city of Paterson had, by legislative authority, devoted the river along its parks to park uses. It, therefore, affirmed the order brought up by the *certiorari.* From the judgment of affirmance the prosecutor now appeals.

The contention now made before us, on the part of the appellant, is that the act of 1895 does not permit a municipal corporation to acquire by condemnation rights in the property of another municipality which is already devoted to public use, when such acquisition will materially decrease, interfere with, or injure the prior use; and it asserts that the proofs in the case show that the abstraction of water from the Rockaway river, in the quantities proposed by Jersey City, will so largely decrease the normal flow of the Passaic as to materially interfere with the enjoyment of the people of Paterson in that river as an adjunct of the municipal park system.

For the purpose of decision, the soundness of the legal proposition advanced on behalf of the appellant may be conceded. The difficulty with its case, as it seems to us, is that the proposition has no application to the facts. And for this reason: The legislature, in its grant to the municipality to establish a system of public parks, conferred no power upon it to impose any public user upon the waters of the Passaic. The statute under which Paterson acted in the purchase and construction of its two parks was that of March 14th, 1883, entitled "An act to provide for the purchase, construction and maintenance of public parks by the cities and other municipalities in this state." *Comp. Stat., p.* 4141. That act authorizes municipalities which desire to take advantage of its provisions to purchase or condemn

"one or more tracts of land lying wholly or partly within or without the limits of said city or other municipality, for the use of the inhabitants of such city or municipality, as a public park or parks," &c.   There is no suggestion in this statute of an intention on the part of the legislature to authorize any municipality desiring to establish a park or parks, to appropriate for such purpose anything except land, with the rights incident thereto; much less is there anything in the legislation indicative of a purpose on the part of the legislature to permit any such municipality to appropriate to park uses the public waters of the state, and thus deprive the state, to some extent at least, of its control over them. That waters like those of the Rockaway and Passaic rivers are public waters, and that the state in its sovereign capacity, has control over them, as representative of and for the benefit of the people in common, we have already declared in *Attorney-General* v. *Hudson County Water Co., 70 N. J. Eq.* 695, 696.

A municipality may, of course, under the authority conferred upon it by the act of 1883, and in its discretion, purchase or condemn for park purposes lands washed by a river flowing along its shores, and thereby acquire in the stream such rights as any other riparian owner would have.   But this is the limit of its power, and it cannot, by virtue of such purchase or condemnation, impose upon the waters of the stream any public easement whatever.

We conclude, therefore, that the proposed condemnation by the municipality of Jersey City will not superimpose an additional public use upon one already existing under the authority of the legislature.

The judgment under review will be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRISON, TRENCHARD, PARKER, BERGEN, BLACK, BOGERT, VREDENBURGH, WHITE, HEPPENHEIMER, WILLIAMS, JJ.   12.

*For reversal*—None.